UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIAM VAN OYEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:19-CV-2561-SNLJ |
| ) | |
| MSH CHEVROLET CADILLAC, INC., ) | |
| d/b/a ELCO CHEVROLET d/b/a ELCO ) | |
| CADILLAC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Plaintiff William van Oyen brought this employment discrimination lawsuit under the Age Discrimination in Employment Act, 29 U.S.C. § 623 ("ADEA"), against his former employer, defendant MSH Chevrolet Cadillac, Inc., d/b/a ELCO Chevrolet and ELCO Cadillac. This matter is before the Court on defendant's motion for summary judgment [#52], which has been fully briefed.

### I. Factual Background

The follow facts are undisputed except where indicated. Plaintiff was hired as a Finance Manager by defendant ELCO on March 28, 2016 at age 57. Plaintiff's wife is the first cousin of defendant's owner, Mark Hadfield. Plaintiff claims that, as early as his first week of employment, defendant's employees began taunting and teasing Van Oyen about his age. They called him nicknames that pertained to his age such as "old goat," "goat," "old sack of balls," "old as dirt," "B.V. Old," and "B.V. Slow." Someone said that

plaintiff was the only person old enough to see the Chicago Cubs win the World Series twice.

Plaintiff alleges that he was frequently and repeated required to work longer hours than similarly situated younger employees and that he was unable to leave work early when others were. However, sales managers had no authority to make plaintiff stay late; rather, plaintiff also testified that he stayed because it was "the right thing to do" and that he would stay if a customer was waiting to complete a deal in the evening.

On March 7, 2018, plaintiff told his supervisor that he was frustrated he was again kept late on a day he was scheduled to be off work early. Although plaintiff denies that he used "the F word" twenty times, as reported by another employee, plaintiff admits that he used "the F word" one time, and that customers were "approximately six feet away." He also admits that he had been reprimanded for "similar conduct" nine months earlier.

On March 8, 2018, plaintiff informed Hadfield that the age discrimination and harassment needed to stop after Hadfield exclaimed "we got the GOAT!" and made other comments at a company dinner. The next day, plaintiff was terminated for, defendant says, making the March 7 profane outburst in front of staff and customers.

Plaintiff filed his complaint in September 2019. His amended complaint contains three counts: (I) Retaliation under the ADEA; (II) Hostile Work Environment/ Harassment under the ADEA; and (III) Age Discrimination under the ADEA. The parties engaged in contentious discovery, and plaintiff was allowed additional time to complete the deposition of a recalcitrant former employee of defendant. In addition, plaintiff

sought and received an order compelling defendant to disclose performance evaluations of defendant's employees who were terminated for the use of profanity. Defendant moved for summary judgment, and additional briefing was allowed to address the late-discovery matters.

II. **Legal Standard**

Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

### III. Summary Judgment

Defendant has moved for summary judgment on all three of plaintiff's counts.

### A. Count I

For his retaliation claim, plaintiff claims his complaints regarding age-based harassment resulted in worsening harassment and ultimately his termination. He claims that the harassment, including jokes, taunting, and purposeful humiliation constituted adverse employment action that placed him at a material employment disadvantage.

The state of the law of ADEA retaliation is somewhat uncertain. To establish a prima facie case of retaliation, a plaintiff must demonstrate: (1) that he engaged in statutorily protected activity; (2) that he suffered an adverse employment action; and (3) that a causal connection existed between the adverse employment action and the protected activity. *See Heisler v. Nationwide Mut. Ins. Co.*, 931 F.3d 786, 794 (8th Cir. 2019). Retaliation claims under the anti-discrimination statutes for sex and fair labor practices are to be addressed under the shifting burden of production of the *McDonnell Douglas* framework. *Id.* The *McDonnell Douglas* framework for indirect evidence involves the following: First, the plaintiff has the burden of making a prima facie case of discrimination. *Grant v. City of Blytheville*, 841 F.3d 767, 773 (8th Cir. 2016) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). If the plaintiff makes a prima facie case, the employer has the burden of articulating a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the employer meets this burden, then the plaintiff has the burden to produce evidence that the proffered nondiscriminatory reason

is a pretext for discrimination. *Id*. Despite this shifting of the burden of production, the "plaintiff at all times bears the 'ultimate burden of persuasion.' " *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). The ADEA has similar elements to Title VII for any claim for discrimination or retaliation, and the Eighth Circuit has "applied *McDonnell Douglas* to ADEA claims when addressing them along with other discrimination claims, it is unclear whether *McDonnell Douglas* technically applies to the ADEA because the ADEA has a 'but-for' causation standard rather than the mixed motives standard used in other statutes." *Heisler*, 931 F.3d at 794. "It is clear, though, that a plaintiff who fails to meet the lower standard of Title VII…necessarily fails to meet the ADEA's standard as well."

Plaintiff alleges that he engaged in statutorily protected activity when he voiced his complaints about age-related harassment and discrimination to defendant's employees. The final complaint occurred after defendant's owner, Mr. Hadfield, said at a company sales dinner "we've got the goat!" with respect to plaintiff. Plaintiff complained to Mr. Hadfield himself after the comment was made. Plaintiff was terminated the next day—March 9, 2018. Plaintiff states that his complaints about the age-related harassment were the "but for" cause of his termination.

Plaintiff further argues that defendant's stated justification—that plaintiff was terminated as the result of profanity-laden outburst in front of customers—is pretextual. The essential facts of the altercation that defendant says lead to plaintiff's termination are largely not in dispute. Plaintiff testified that, the evening of March 7, 2018, he was upset

5

that he had to work late, so he complained to sales manager Jim Russo. Defendant states that plaintiff used "the F word" 20 times during a heated exchange. Plaintiffs concedes that he used "the F word," but he says he used it only once. Plaintiff appears to dispute that customers were present for the interaction, but plaintiff testified that there were customers "approximately six feet away."

Plaintiff also concedes that he had previously used expletives in front of customers in June 2017 and that he had been warned that doing so again could result in termination. Defendant says that it terminated plaintiff for using profanity in front of customers, just as plaintiff was warned would happen.

Plaintiff argues that the profanity justification was pretext for a few reasons. First, plaintiff says that although the incident happened on March 7, he was not fired until March 9—the day after he complained to Mr. Hadfield. Defendant explains that the termination occurred the day that Jeff Pirozzi, defendant's human resources manager, learned about the incident. Mr. Pirozzi had not heard about the incident earlier because the sales manager wasn't at work to report it a day earlier. Within two hours, Mr. Pirozzi spoke with Mr. Hadfield, who agreed with Mr. Pirozzi's recommendation to terminate plaintiff's employment.

Next, plaintiff argues that he was not fired in June 2017 after using profanity in front of customers, so he couldn't have been fired for that reason when he used profanity in front of customers a second time. Plaintiff also suggests that his performance was too good for him to have been fired merely for using profanity, and he sought and received

additional discovery time to inspect personnel files of other employees fired for use of profanity. Plaintiff ignores that he was the only employee who was given a "second chance" when it came to use of profanity in front of customers. Defendant has produced evidence of seven other employees who were fired for the use of profanity: four were fired for using the language in front of customers, and three were fired for directing it to co-workers. Unlike plaintiff, the other employees were fired on the first offense. Plaintiff complains that only one of the seven other employees was similarity situated in terms of position, but that is not dispositive. Plaintiff cannot identify any employee who had a profane outburst in front of customers and was not terminated. Further, although plaintiff was able to find three "needs improvement" comments in the seven personnel files, the seven other employees terminated for use of profanity were meeting or exceeding expectations overall in their performance reviews.

Plaintiff denies he received special accommodations due to his relationship with Mr. Hadfield—he says any latitude offered to him was due to his "high level of performance." But this dispute is not material. Plaintiff had been previously admonished about using profanity in front of customers, and he was terminated the same day the defendant's human resources manager learned of his profane outburst.

Plaintiff insists that resolving this matter on summary judgment requires an impermissible credibility determination, but, ultimately, plaintiff fails to raise a genuine issue of fact with respect to retaliation. Plaintiff cannot show that his complaints regarding alleged age-related harassment were the but-for cause of his termination.

B.  **Count II**

Plaintiff's Count II is for age-related harassment in violation of the ADEA.

Harassment in violation of the ADEA is actionable when that harassment is "so 'severe or pervasive' as to 'alter the conditions of the victim's employment and create an abusive working environment.'" *Breeding v. Arthur J. Gallagher & Co.*,164 F.3d 1151, 1156 (8th Cir. 1999), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998)). An adverse employment action is not required, but the standard for establishing a harassment claim is demanding:

> To be actionable, harassment must be both objectively and subjectively offensive, such that a reasonable person would consider it to be hostile or abusive, and courts make this determination "by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher*, 524 U.S. at ——, 118 S.Ct. at 2283 (internal quotations omitted). "[S]imple teasing ... offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id*. (internal quotations omitted). "[S]poradic use of abusive language, gender-related jokes, and occasional teasing" are "the ordinary tribulations of the workplace," and as such, they do not amount to actionable harassment. *Id*. at 2284, 118 S.Ct. 2275 (internal quotations omitted).

*Breeding*, 164 F.3d at 1158–59.

Plaintiff's allegations are well-documented. Plaintiff states that, immediately upon his employment at defendant, the alleged harassment began with nicknames and epithets such as "old goat," "goat," "old sack of balls," "old as dirt," "B.V. Old," and "B.V.

8

Slow." Someone said plaintiff was the only person old enough to see the Chicago Cubs win the World Series twice.

Plaintiff alleges that "B.V. Slow" was an age-related comment, but defendant contends that it referred to his slow work manner. Plaintiff agrees there was a "normal tension" between sales and finance managers at the dealership because sales managers would want finance managers to work more quickly to close deals. Plaintiff, in fact, agrees he was slow to process deals because he was methodical. Regardless, the parties agree that management told other employees to stop using the nickname in June 2017. Plaintiff claims the name-calling and comments continued, however.

Defendant's owner Mark Hadfield publicly compared plaintiff to both Billy Graham and Rodney Dangerfield, and Hadfield also referred to plaintiff as the "goat." Hadfield also gave plaintiff a sticker with a goat on it. Plaintiff says that Hadfield told him at the time that he had wanted to give plaintiff the sticker earlier, but he waited due to plaintiff's complaints regarding harassment and discrimination. On plaintiff's one-year employment anniversary, plaintiff was presented with a cake with a goat depicted on it. Plaintiff suggests that such one-year anniversary celebrations were not normal, that he was embarrassed by it, and that it was merely an opportunity to make fun of plaintiff's age. Although plaintiff appears to deny it, several other employees testified that plaintiff referred to himself as "the G.O.A.T." as an acronym for "greatest of all time," and that the use of the term "goat" was a play on that acronym. Plaintiff admits that he had a glass or a mug on his desk that depicted a goat that was given to him by his daughter, but he

denies it suggests that he embraced the term "goat" or "G.O.A.T." Plaintiff appears in a video showing him bleating like a goat at the office, but plaintiff also denies that it suggests he embraced the "goat" or "G.O.A.T." moniker.

Even if plaintiff did not imitate being a goat and otherwise did not embrace the term goat as standing for "greatest of all time," and even if all the events that plaintiff alleges took place, they do not rise to the level of an actionable harassment action under applicable Eighth Circuit law. This Court considers all the circumstances involved, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher*, 524 U.S. at 786. Looking at the jokes, the cake, the sticker, and the other comments raised by plaintiff under the circumstances, it cannot be said that they "altered the terms" of plaintiff's employment. *See Breeding*, 164 F.3d at 1159.

Plaintiff has cited no cases in which a plaintiff has successfully brought harassment claims related to age. In *Breeding*, the age-related comments were "isolated" and "not sufficiently derogatory or demeaning to permit a finding that they altered the terms of [plaintiff's] employment." *Id.* And, even though the *Breeding* plaintiff "felt she was unfairly criticized and often yelled at, … these conditions, while not desirable, do not amount to actional harassment on the basis of age." *Id.* The United States Supreme Court has been clear that the "standards for judging hostility are sufficiently demanding to ensure that" the anti-discrimination statutes do "not become a 'general civility code.'"

*Faragher*, 524 U.S. at 788 (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998)).

In *Peterson v. Scott County*, 406 F.3d 515 (8th Cir. 2005), *abrogated on other grounds by Torgerson*, 643 F.3d 1031, the Eighth Circuit rejected a hostile work environment claim in which a supervisor made repeated references to "old ladies," refused to train plaintiff because of her age, and co-workers made comments about women being lazy. *Peterson*, 406 F.3d at 524. The *Peterson* court found the repeated comments to be the "type of isolated incidents, teasing and offhand comments which, while offensive, do not reach the level of harassment." *Id.*

Plaintiff here complains that the age-related comments were constant, and the parties dispute their frequency, but even viewed in the light most favorable to plaintiff, the comments were not so offensive, humiliating, or threatening so as to constitute a hostile or abusive working environment. Plaintiff complained to his supervisor, who instructed others to stop using nicknames for plaintiff, but plaintiff never made written complaints despite opportunities to do so. Plaintiff testified, when asked about other recollections of harassment, that one instance involved fellow employees "saying stuff about me being old" as he walked through the used car building, and they bet him he couldn't do ten push-ups. Employees threw money on the floor to place their bets, and plaintiff did ten push-ups, collected his money, and went back to his office. Although plaintiff disputes that he referred to himself as "the goat," plaintiff bleated like a goat when prompted on video.

11

Plaintiff cites several cases for the proposition that he has made a submissible case of harassment because he indicated it was unwelcome and subjectively offensive. [#62 at 13-14.] But those cases involved far more egregious circumstances than were present here, and none involved ADEA claims. That is not to say that no ADEA complaint could ever amount to a hostile work environment, but "conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788. Plaintiff has not shown facts to support such a change. Plaintiff characterizes the treatment he received as "frequent" and "ridiculous," and he says he was embarrassed by the comments and incidents. Critically, there is no evidence that the comments and jokes interfered with plaintiff's work performance. Plaintiff testified that he continued to work at a "high level" despite the apparent frequency of the jokes, so the conduct did not result in a change in the terms and conditions of his employment nor interfere with his work. *See id*. Defendant's workplace culture certainly appears crude, but such crudeness does not rise to the level of a hostile or abusive environment.

### C. Count III

Finally, plaintiff's Count III claims he was discriminated against on the basis of his age. To establish a prima facie case of discrimination, plaintiff must demonstrate (1) that he is within the protected class; (2) that he was qualified to perform his job; (3) that he suffered an adverse employment action; and (4) that nonmembers of his class were not treated the same. *Breeding*, 164 F.3d at 1156. "The hallmark of an ADEA disparate-treatment claim is intentional discrimination against the plaintiff on account of the

plaintiff's age." *Rothmeier v. Inv. Advisers, Inc*., 85 F.3d 1328, 1331 (8th Cir. 1996). This requires proof that age was the "but-for" cause of the employer's adverse decision. *Gross v. FBL Fin. Servs. Inc*., 557 U.S. 167, 176–78 (2009). If the plaintiff can demonstrate a prima facie case, the burden then shifts to the employer to demonstrate a legitimate, nondiscriminatory reason for the adverse employment action. *Breeding*, 164 F.3d at 1156. "If the employer articulates such a reason, the plaintiff must then demonstrate that the employer's stated reason is pretextual and that the real reason for the employer's adverse employment action was unlawful age…discrimination." *Id.* at 1157.

Plaintiff was a member of the protected class, and defendant does not challenge that plaintiff was qualified to perform his job. To show that plaintiff suffered an adverse employment action, he must show a tangible change in working conditions that produces a material employment disadvantage, such as termination, cut in pay or benefits, or other changes that affect an employee's future career prospects; "[m]inor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action." *Bernard v. St. Jude Med. S.C., Inc*., 398 F. Supp. 3d 439, 458–59 (D. Minn. 2019) (citing *Clegg v. Ark. Dep't of Corr*., 496 F.3d 922, 926 (8th Cir. 2007)). Although the adverse action need not involve termination or pay cuts, "not everything that makes an employee unhappy is an actionable adverse action." *Sellers v. Deere & Co.*, 791 F.3d 938, 942 (8th Cir. 2015) (internal citations omitted).

This Court already held that plaintiff cannot show that defendant's non-discriminatory justification for plaintiff's termination was pretext. Plaintiff alleges that in addition to termination, he was discriminated against because he was required to stay late on his early days off. That discrimination claim also fails. Plaintiff admits that it is typical for finance managers to stay past their scheduled working hours when customers are still in the store and in the process of closing a sale; they do not tell the customer to come back the next day because they want the deal closed. Plaintiff could not cite to any specific day when younger managers were treated differently, and his supervisor testified they were not treated differently. Plaintiff said he would stay late because it was "the right thing to do" and that he would stay if a customer were waiting to complete a deal in the evening. Plaintiff cannot show that staying late constituted a tangible change in working conditions that put plaintiff at a material disadvantage nor that non-members of his class were treated differently from plaintiff.

Plaintiff cannot show that his termination or late evenings constituted unlawful discrimination.

### III. Motion to Strike

Plaintiff filed a motion to strike [#76] the defendant's supplemental statement of additional facts. In the alternative, plaintiff sought permission to respond to the supplemental statement of facts. Plaintiff's alternative request will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [#52] is GRANTED.

**IT IS FURTHER ORDERED** that plaintiff's alternative motion for leave to file a reply to defendant's supplemental statement of facts [#76] is GRANTED.

Dated this  9th  day of July, 2021.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE